**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                           :
                                                       :
      Plaintiff,                                    : Civil Action No. 1:22-cv-02432
                                                       :
v.                                                     :
                                                       : **COMPLAINT FOR VIOLATIONS OF**
RENEWABLE ENERGY GROUP, INC.,                          : **SECTIONS 14(a) AND 20(a) OF THE**
JEFFREY STROBURG, RANDOLPH L.                          : **SECURITIES EXCHANGE ACT OF**
HOWARD, CYNTHIA J. WARNER,                             : **1934**
WALTER BERGER, JAMES C. BOREL,                         :
DELBERT CHRISTENSEN, DEBORA M.                         : **JURY TRIAL DEMANDED**
FRODL, DYLAN GLENN, PETER J.M.                         :
HARDING, NIHARIKA TASKAR                               :
RAMDEV, CHRISTOPHER D. SORRELLS,                       :
                                                       :
      Defendants.                                   :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Renewable Energy Group, Inc. ("Renewable Energy or the "Company") and the members Renewable Energy board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Renewable Energy by Chevron Corporation ("Chevron") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 23, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Cyclone Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Chevron, will merge with and into Renewable Energy with Renewable Energy surviving the merger and becoming a wholly owned subsidiary of Chevron (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Renewable Energy common share issued and outstanding will be converted into the right to receive $61.50 in cash (the "Merger Consideration").

3.  As discussed below, Defendants have asked Renewable Energy stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Guggenheim Securities, LLC ("Guggenheim") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.  It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Renewable Energy stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will occur in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Renewable Energy common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jeffrey Stroburg has served as a member of the Board since June 2006 and is the Chairman of the Board.

11. Individual Defendant Randolph L. Howard has served as a member of the Board since February 2007 and is the Vice Chairman of the Board.

12. Individual Defendant Cynthia Warner has served as a member of the Board since January 2019 and is the Company's President and Chief Executive Officer .

13. Individual Defendant Walter Berger has served as a member of the Board since September 2020.

14. Individual Defendant James C. Borel has served as a member of the Board since March 2018.

15. Individual Defendant Delbert Christensen has served as a member of the Board since August 2006.

16. Individual Defendant Debora M. Frodl has served as a member of the Board since March 2018.

17. Individual Defendant Dylan Glenn has served as a member of the Board since November 2021.

18. Individual Defendant Peter J.M. Harding has served as a member of the Board since December 2014.

19. Individual Defendant Niharika Taskar Ramdev has served as a member of the Board since November 2021.

20. Individual Defendant Christopher D. Sorrells has served as a member of the Board since November 2008.

21. Defendant Renewable Energy is incorporated in Delaware and maintains its principal offices at 416 South Bell Avenue, Ames, Iowa, 50010. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "REGI."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.     **The Proposed Transaction**

24.    Renewable Energy Group provides lower carbon transportation fuels in the United States and internationally. The Company utilizes a production, distribution, and logistics system to convert natural fats, oils, and greases into advanced biofuels. It operates through Bio-Based Diesel, Services, and Corporate and Other segments. The Company produces bio-based diesel from various low carbon feedstocks, including distillers corn and used cooking oils, and inedible animal fats, as well as from soybean and canola oils. It also purchases and resales bio-based diesel produced by third parties; and sells RD blended with petroleum-based diesel, renewable identification numbers and California low carbon fuel standard credits, raw material feedstocks from third parties, processed bio-based diesel, related byproducts, and renewable energy government incentive payments. In addition, the company provides day-to-day management and operational services to bio-based diesel production facilities; and construction management and general contracting services for the construction of bio-based diesel production facilities. Further, it engages in the trading of petroleum-based heating oil and diesel fuel, including the petroleum portion of sales of biodiesel and RD blended with petroleum-based diesel. As of December 31, 2021, the Company owned and operated eleven biorefineries, consisting of nine locations in North America and two locations in Europe. Renewable Energy Group was founded in 1996 and is headquartered in Ames, Iowa.

25.    On February 28, 2022, Renewable Energy and Chevron jointly announced that they had entered into a proposed transaction:

> SAN RAMON, Calif. & AMES, Iowa--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) and Renewable Energy Group, Inc. (NASDAQ: REGI) ("REG") announced today a definitive agreement under which Chevron will acquire the outstanding shares

of REG in an all-cash transaction valued at $3.15 billion, or $61.50 per share.

The acquisition combines REG's growing renewable fuels production and leading feedstock capabilities with Chevron's large manufacturing, distribution and commercial marketing position.

"REG was a founder of the renewable fuels industry and has been a leading innovator ever since," said Chevron Chairman and CEO Mike Wirth. "Together, we can grow more quickly and efficiently than either could on its own."

The transaction is expected to accelerate progress toward Chevron's goal to grow renewable fuels production capacity to 100,000 barrels per day by 2030 and brings additional feedstock supplies and pre-treatment facilities. After closing of the acquisition, Chevron's renewable fuels business, Renewable Fuels - REG, will be headquartered in Ames, Iowa. In addition, CJ Warner is expected to join Chevron's Board of Directors.

"This transaction delivers premium cash value to shareholders and will give us additional resources as we aim to accelerate growth and strengthen our collective ability to deliver the sustainable fuels our customers and the world need," said CJ Warner, REG president & CEO. "Our employees' hard work and dedication have built a fantastic renewable fuels company and made this transaction possible. We look forward to joining Chevron's team."

The transaction is expected to be accretive to Chevron earnings in the first year after closing and accretive to free cash flow after start-up of REG's Geismar expansion.

**Transaction Details**

The acquisition consideration is 100 percent cash. Total enterprise value of $2.75 billion includes a net cash position around $400 million greater than debt.

The transaction has been approved by the Boards of Directors of both companies and is expected to close in the second half of 2022. The acquisition is subject to REG shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

> The transaction price represents a premium of around 57% on a 30-day average based on closing stock prices on February 25, 2022.
>
> **Advisors**
>
> Goldman Sachs & Co. LLC is acting as financial advisor to Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. Guggenheim Securities, LLC is acting as financial advisor and Latham & Watkins LLP is acting as legal advisor to REG.

\* \* \*

26. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Renewable Energy's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

27. On March 23, 2022, Renewable Energy filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Renewable Energy Financial Projections*

28. The Proxy Statement fails to provide material information concerning financial projections by Renewable Energy management and relied upon by Guggenheim in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Renewable Energy management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted EBITDA after SBC, Return on Invested Capital, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Guggenheim's Financial Analysis*

33. With respect to Guggenheim's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the estimated terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.50% to 3.50%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.25%

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

to 10.25%; and (iv) the estimated weighted average cost of capital of Renewable Energy and the inputs used to apply the capital asset pricing model.

34. With respect to Guggenheim's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual metrics for the companies observed by Guggenheim in the analysis, including implied enterprise value and Adjusted EBITDA for each selected public company.

35. With respect to Guggenheim's *Analysis of Selected Precedent Transactions* for the Company, the Proxy Statement fails to disclose the individual metrics for the transactions observed by Guggenheim in the analysis, including the implied purchase prices announced on such date for the selected transaction, the transaction enterprise value and research-forecasted EBITDA of each selected target company.

36. With respect to Guggenheim's *Premiums Paid in Selected Precedent Merger and Acquisition Transactions* analysis, the Proxy Statement fails to disclose the transactions observed and the premiums paid in the reviewed transactions.

37. With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose the thirteen research analysts observed and the stock price targets for Renewable Energy's common stock published by each analyst.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Guggenheim and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Renewable Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Renewable Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Renewable Energy,

including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Renewable Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 25, 2022                                         **MELWANI & CHAN LLP**

                                                              By:  /s *Gloria Kui Melwani*

_____
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*